IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RENEE P. RICO,

       Plaintiff,

vs.                                                                                                 1:19-cv-00291-LF

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

       THIS MATTER comes before the Court on plaintiff Renee P. Rico's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum (Doc. 17), which was fully briefed on December 23, 2019. *See* Docs. 22, 23, 24. The parties consented to my entering final judgment in this case. Docs. 3, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to properly analyze Ms. Rico's subjective complaints of pain. I therefore GRANT Ms. Rico's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.    Standard of Review**

       The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A);

2

20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.  Background and Procedural History

Ms. Rico was born on October 31, 1966, and lives in Albuquerque, New Mexico, with her boyfriend and her dogs. AR 146, 335, 337.[4] She completed her college education and received a Bachelor of Science in Nursing from New Mexico State University. AR 310. Ms. Rico has worked as a nurse in a variety of positions that the vocational expert ("VE") characterized as a private duty nurse, hospice nurse, regular registered nurse ("RN"), and a

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 12-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

utilization review coordinator. AR 153, 340. In January of 2015, Ms. Rico filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI")[5] alleging disability since December 19, 2014, due to myofascial pain syndrome, fibromyalgia, severe depression, diverticulosis, arthritis in back, bulging disk in back, thyroid issues, and herpes. AR 311–16, 335, 338. The Social Security Administration ("SSA") denied her claim initially and on reconsideration. AR 233–48. Ms. Rico requested a hearing before an ALJ. AR 250–51. On June 21, 2017, ALJ Ann Farris held a hearing. AR 129–156. ALJ Farris issued her unfavorable decision on February 28, 2018. AR 33–53.

The ALJ found that Ms. Rico met the insured status requirements of the Social Security Act through December 31, 2018. AR 39. At step one, the ALJ found that Ms. Rico had not engaged in substantial, gainful activity since December 19, 2014, her alleged onset date. *Id*.[6] At step two, the ALJ found that Ms. Rico's fibromyalgia, depression, anxiety, personality disorder with borderline and histrionic traits, and somatoform disorder were severe impairments. *Id*. The ALJ also found that Ms. Rico had medically determinable impairments of hypothyroidism, status post hernia repair, and gastroesophageal reflux disease ("GERD") that were not severe. *Id*. At step three, the ALJ found that none of Ms. Rico's impairments, alone or in combination, met or medically equaled a Listing. AR 40–41. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Rico's RFC. AR 41–46. The ALJ found that Ms. Rico had the RFC to

> perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is able to occasionally climb stairs and stoop; can never

---

[5] The ALJ notes that Ms. Rico protectively filed applications for DIB and SSI on December 19, 2014. AR 36. The record, however, reveals that December 19, 2014, is the alleged onset date, not the date Ms. Rico filed her applications. AR 311–16.

[6] Although Ms. Rico worked after her alleged disability date, her earnings records show that she did not earn income at substantial gainful activity levels. AR 39.

4

climb ladders or scaffolds; can never balance, kneel, crouch, or crawl; the claimant can perform simple work-related decisions with few workplace changes; the claimant can have occasional, limited interaction with supervisors.

AR 41.

At step four, the ALJ concluded that Ms. Rico was not capable of performing her past relevant work as a private duty nurse/hospice nurse, registered nurse, or as a utilization review coordinator. AR 46. At step five, the ALJ found that Ms. Rico was able to perform work that existed in significant numbers in the national economy—such as cashier, marker, and photocopy machine operator. AR 47. The ALJ thus found Ms. Rico not disabled at step five. AR 47–48.

Ms. Rico requested that the Appeals Council review the ALJ's unfavorable decision. AR 307–10. On January 28, 2019, the Appeals Council denied the request for review. AR 1–5. Ms. Rico timely filed her appeal to this Court on March 29, 2019. Doc. 1[7]

**IV.     Ms. Rico's Claims**

Mr. Rico raises two main arguments for reversing and remanding this case. First, Ms. Rico contends that the ALJ improperly rejected the opinions of her health care providers, including certified physician's assistant David Pacheco and licensed professional clinical counselor Edward Thomas, contrary to Social Security Ruling ("SSR") 06-3p. Doc. 17 at 2, 10–19. Second, Ms. Rico contends that the ALJ's RFC is not based on substantial evidence because she failed to account for Ms. Rico's subjective allegations of pain. *Id*. at 2, 19–22. I find that remand is required because the ALJ failed to account for Ms. Rico's subjective allegations of pain. I will not address the other issue she raises because it may be affected by the Commissioner's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[7] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 3.

5

V.      **Analysis**

Focusing on her fibromyalgia, Ms. Rico argues that the ALJ did not account for her subjective complaints of pain when formulating her RFC. Doc. 17 at 19–23; Doc. 23 at 5–8. I agree. Generally, "[a] claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (internal citation omitted). "Nonetheless, the claimant is entitled to have his [or her] nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighted alongside the medical evidence. An ALJ may not ignore evidence and make no findings." *Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988) (internal citations omitted).

An ALJ must evaluate a claimant's subjective allegations of pain when a claimant proves "by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Thompson,* 987 F.2d at 1488. The claimant must also show "there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and . . . if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (internal citation and quotation omitted).

The Tenth Circuit established a framework for analyzing evidence of disabling pain in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), referred to as the "*Luna* factors." *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 795 (10th Cir. 2013) (unpublished). In *Huston*, the Tenth Circuit expanded the *Luna* factors and noted that they were not "exhaustive" but "merely illustrative." 838 F.2d at 1132 n.7. Those factors include (1) the levels of medication and their effectiveness, (2) the extensiveness of the attempts (medical or nonmedical) to obtain relief, (3) the frequency of medical contacts, (4) the nature of daily activities, (5) subjective measures of

6

credibility that are peculiarly within the judgment of the ALJ, (6) the motivation of and relationship between the claimant and other witnesses, and (7) the consistency or compatibility of nonmedical testimony with objective medical evidence. *Jimison*, 513 F. App'x at 795 (citing *Huston*, 838 F.2d at 1132). Similar factors are found in SSR 16-3p,[8] and the Tenth Circuit has directed ALJs to consider those factors. *Hamlin*, 365 F.3d at 1220.

Here, the ALJ found that Ms. Rico had a pain-producing impairment—fibromyalgia— and that there was a loose nexus between Ms. Rico's fibromyalgia and her subjective allegations of pain. AR 39 (finding fibromyalgia a severe impairment), 42 (finding that Ms. Rico's impairments might be expected to cause some of her alleged symptoms). However, as Ms. Rico points out, the ALJ failed to properly consider her subjective complaints of pain to determine whether the pain was in fact disabling. Doc. 17 at 21–23. Instead, the ALJ used boilerplate language to bypass the analysis of the *Luna* factors, stating that "the claimant's statements concerning the intensity, persistence and limiting effects of [Ms. Rico's] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons

---

[8] The factors in SSR 16-3p include:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2016 WL 1119029, at *7–8. (Mar. 16, 2016).

explained in this decision." AR 42. However, there is no indication in the ALJ's decision that Ms. Rico's fibromyalgia symptoms were properly considered along with her other impairments.

The ALJ only addressed the consistency factor. She explained that "[t]he objective medical evidence reveals" that Ms. Rico "had complained of pain and mental health impairments since prior to the alleged onset date," but that "clinical findings have generally been stable. The objective medical evidence fails to establish debilitating impairments." *Id*. The ALJ then summarized the medical records and concluded, "[t]he above objective medical evidence shows that there are few objective findings to support a debilitating physical or mental impairment." AR 42–44. Nowhere does the ALJ discuss or consider the subjective evidence or provide good reasons for rejecting that evidence.

Subjective evidence is particularly important when assessing whether a claimant's pain due to fibromyalgia is disabling.

> Fibromyalgia . . . is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue. It is a chronic condition, causing long-term but variable levels of muscle and joint pain, stiffness and fatigue. The disease is poorly-understood within much of the medical community and is diagnosed entirely on the basis of patients' reports and other symptoms.

*Moore v. Barnhart*, 114 F. App'x 983, 991 (10th Cir. 2004) (internal citations and quotations omitted). Fibromyalgia is defined by a repeated manifestation of at least six symptoms, signs or co-occurring conditions including widespread pain, fatigue, depression, and anxiety disorder. SSR 12-2p, 2012 WL 3104869, at *3.[9] "[I]ts symptoms are entirely subjective. *There are no*

---

[9] Symptoms and signs that may be considered include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of

*laboratory tests for the presence or severity of fibromyalgia.*" *Moore*, 114 F. App'x at 991 (internal citation omitted) (emphasis in original). Fibromyalgia patients look generally healthy. "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling, . . . muscle strength, sensory functions, and reflexes are normal despite the patient's complaints of acral numbness." *Id.* at 991–92. "Fibromyalgia can be disabling." *Id.* at 991.

The record is replete with evidence that relates to factors other than consistency for assessing Ms. Rico's subjective assertions of severe pain. The record contains evidence of the first factor—the levels of medication and their effectiveness. Sandia Neurology notes that by May of 2013, Ms. Rico had tried and failed many medications for pain, depression, and anxiety. AR 478. "[N]one seemed to work despite a year or more trial." AR 464. In September of 2014, Ms. Rico reported that gabapentin worked initially but its effectiveness waned since initiation. AR 676. In October of 2014, Ms. Rico's doctors provided her with a trial of hydromorphone and increased the dosage of gabapentin. AR 680. By late October 2014, Ms. Rico's doctors had prescribed opioid medication. AR 625. In December of 2014, Ms. Rico reported worsening physical functioning with opioid and non-opioid use. AR 665. In January 2015, Ms. Rico reported that the hydromorphone was not working, and she was instructed to taper off of that and gabapentin to start a trial of pregabalin. AR 633, 662, 751. In February of 2015, Ms. Rico was trying Lyrica for pain. AR 756. By June of 2015, Ms. Rico's doctors prescribed oxycodone and Percocet. AR 775–76, 799–800.

Further, the record contains evidence of the extensiveness of Ms. Rico's attempts to

---

appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *See* SSR 12-2p, 2012 WL 3104869, at *3 n.9 (July 25, 2012). Other co-occurring conditions include anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome.

9

obtain relief from her symptoms and frequent of medical contacts, the second and third factors. In 2013 and 2014, Ms. Rico sought relief from migraine headaches that culminated in nerve block and Botox injections. AR 454, 459, 471, 475, 478, 646. She sought medical treatment for abdomen pain, right lower quadrant pain, lower back pain, and groin pain, from January 2014 through 2016, including a pelvic ultrasound, CT scans, and MRIs in attempts to determine the cause of her pain. AR 122–23, 424, 661, 683, 711. She sought medical attention twenty-one times in 2014 to address her symptoms, including an emergency room visit, a colonoscopy, trigger point injections, nerve block injections, and a trip to the Mayo clinic in Minnesota. AR 419, 424, 428, 435, 437, 625, 646–48, 651–52, 656, 661, 666, 670, 672, 676–78, 680, 683, 687, 705–12, 731–40, 742, 747. In 2015, Ms. Rico sought medical care ten times for pain and symptoms of fibromyalgia, including additional nerve block injections and pain medication management. AR 633, 662, 723, 756, 761, 765, 767, 775, 799. From 2015 through 2018, Ms. Rico continued to receive medical treatment for her lower abdomen pain, nausea and dizziness, depression and anxiety, weakness, GERD, fatigue, pain in her legs, and headaches, all of which are symptoms of fibromyalgia. AR 54, 58–65, 68–69, 72–88, 96–103, 110, 111–23, 787–90; *see* SSR 12-2p, 2012 WL 3104869, at *3 n.9 (signs and symptoms of fibromyalgia), n.10 (co-occurring conditions). Despite this evidence, the ALJ did not consider the first three *Luna* factors in her analysis of Ms. Rico's subjective complaints of pain.

The ALJ is charged with carefully considering all of the relevant evidence and linking his or her findings to specific evidence. *Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir. 1996) (holding that "[t]he record must demonstrate that the ALJ considered all of the evidence," and while he or she need not discuss every piece of evidence, the ALJ must "discuss[ ] the evidence supporting his decision, . . . the uncontroverted evidence he chooses not to rely upon, [and]

significantly probative evidence he rejects"). When, as here, an ALJ does not provide any explanation for rejecting significant evidence, the Court is "left to speculate what specific evidence led the ALJ to [his or her conclusion]," *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995), and it thus cannot meaningfully review the ALJ's determination. *See Clifton,* 79 F.3d at 1009. Here, the ALJ considered only the objective evidence in the record and failed to consider Ms. Rico's subjective complaints of pain.

Because the ALJ failed to consider Ms. Rico's subjective complaints of pain, her RFC assessment is not supported by substantial evidence. "The RFC assessment must be based on *all* of the relevant evidence in the case record . . . ." SSR 96-8p,1996 WL 374184, *5 (July 2, 1996) (emphasis in original).

> In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:
> *Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms . . . and
> *Set forth a logical explanation of the effects of the symptoms, including pain, in the individual's ability to work.

*Id*.at *7. As discussed above, the ALJ did not account for Ms. Rico's complaints of pain and other fibromyalgia symptoms in assessing Ms. Rico's RFC. Accordingly, the RFC is not supported by substantial evidence and remand is required.

The Commissioner's arguments with regard to Ms. Rico's subjective complaints of pain are without merit. The Commissioner first argues that the ALJ specifically discussed Ms. Rico's fibromyalgia in her step three Listings analysis. Doc. 22 at 11. This "discussion" is a two-sentence paragraph that explains that fibromyalgia could medically equal a listing, but that there is no evidence that it meets a listing in this case. AR 40. The ALJ's conclusion at step three is an insufficient substitute for an analysis of Ms. Rico's subjective complaints of pain at step four.

11

The Commissioner next argues that the ALJ "considered the medical evidence pertaining to Plaintiff's fibromyalgia in four pages of recitation of findings." Doc. 22 at 11. The pages cited by the Commissioner consist of a summary of the medical records and the ALJ's analysis of the weight given to the medical source statements. AR 42–46. The ALJ did not discuss the *Luna* factors or provide an analysis of Ms. Rico's subjective complaints of pain.

Citing *Poppa v. Astrue*, 569 F.3d 1167 (10th Cir. 2009), the Commissioner contends that the ALJ is not required to perform a formalistic factor-by-factor recitation of evidence. Doc. 22 at 19. Somewhat inconsistently, the Commissioner also contends that the ALJ addressed the *Luna* factors. For example, the Commissioner argues that the ALJ found Ms. Rico's subjective complaints were inconsistent with the objective medical evidence. *Id*. at 19–20. As discussed above, this argument is unavailing. The Commissioner also argues that the ALJ's finding that Ms. Rico's lack of treatment for her mental impairments addresses the factors. *Id*. at 20–21. However, "[p]eople with [fibromyalgia] may also have nonexertional physical or mental limitations because of their pain or other symptoms." SSR 12-2p, 2012 WL 3104869, at *6 (footnote omitted). The lack of treatment specifically for mental impairments does not negate the need for a thorough evaluation of Ms. Rico's fibromyalgia symptoms.

The Commissioner further argues that the ALJ found that Ms. Rico's work activity after her alleged onset date detracted from her subjective complaints. Doc. 22 at 21. This is a misstatement of the ALJ's decision. The ALJ found at step one that Ms. Rico had worked after the alleged onset date but that the work did not rise the level of substantial gainful activity. AR 39. The ALJ did not, however, use this finding as a reason for discounting Ms. Rico's subjective complaints of pain in formulating Ms. Rico's RFC. *See* AR 41–46. The Commissioner's argument is nothing more than a post hoc rationalization that is not apparent from the ALJ's

decision. It is not enough for the Commissioner to "suppl[y] some reasons that it believes would support the ALJ's RFC finding" if the "ALJ did not provide these explanations" herself. *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007). "[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Id*. at 1207–08 (citations omitted). The Commissioner's arguments are without merit.

## VI. Conclusion

The ALJ erred by failing to properly analyze Ms. Rico's subjective complaints of pain. The Court remands this case so that the ALJ can perform a proper analysis. The Court does not reach Ms. Rico's other claimed errors, as these "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 17) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent